**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DORIS SCHLEICHER, on behalf of herself and all others similarly situated, <br><br>                   Plaintiff, <br><br> v. <br><br> API FINANCIAL SOLUTIONS, INC., <br><br>                Defendant. | CIVIL ACTION NO. 4:23-cv-01431-SRC |

**PLAINTIFF'S UNOPPOSED MOTION AND**
**SUGGESTIONS FOR PRELIMINARY APPROVAL AND TO DIRECT**
<u>**NOTICE OF PROPOSED SETTLEMENT TO THE CLASS**</u>

## I.    INTRODUCTION

Plaintiff, Doris Schleicher ("Plaintiff" or "Representative Plaintiff"), submits the following Unopposed Motion for Preliminary Approval of Class Action Settlement. Notably, Defendant API Financial Solutions Inc. ("API" or "Defendant") does not oppose certification of the Settlement Class[1] for purposes of effectuating the Settlement submitted herewith for preliminary approval.[2]

The Settlement follows months of good-faith, arms' length negotiations and provides that Defendant will pay $457,500 into a non-reversionary common fund (the "Settlement Fund") for the benefit of Plaintiff and Settlement Class Members. The Settlement Class Members will receive individual notice of the Settlement by U.S. mail. Every Participating Settlement Class Member can make a claim for reimbursement of documented losses incurred as a result of the Data Incident, up to $5,000 or, alternatively, for a pro rata cash award payment. Notice and Settlement Administration costs, as well as litigation expenses, attorneys' fees, and a Class Representative Service Award as awarded by the Court, will be paid out of the Settlement Fund. Plaintiff and Settlement Class Counsel strongly endorse the Settlement as an excellent result for the Settlement Class. They thus respectfully submit that the Court should grant preliminary approval and direct that Notice be sent to the Settlement Class in accordance with the Settlement Agreement.

## II. BACKGROUND

On November 9, 2023, Plaintiff Doris Schleicher ("Schleicher") filed a putative class action complaint against API in the United States District Court for the Eastern District of Missouri as the result of a flash drive deposited with a carrier and thereafter lost in transit. In January 2024, the Parties

---

[1] Capitalized terms herein have the same meaning as those set forth in the Settlement Agreement (referred to herein as the "Settlement Agreement," "Settlement," or "S.A."), attached as Exhibit A to the Declaration of Mason A. Barney in Support of Plaintiff's Unopposed Motion for Preliminary Approval and to Direct Notice of Proposed Settlement to the Class ("Barney Decl.")

[2] Defendant does not oppose this Motion.  Defendant does not take a position on the amount of a service award or attorneys' fees and costs.  While Defendant denies Plaintiff and the putative class have suffered injury or damages, Defendant does not take a position on the proposed settlement benefits, including the dollar value of settlement benefits Participating Settlement Class Members may receive through this Settlement.

began to engage in discussions regarding early resolution, which lasted for months and included good faith, arms-length negotiations between the Parties and their counsel. During the negotiation period, the Parties engaged in an informal exchange of information and documents and presented their positions and arguments to each other. On May 13, 2024, the Parties' extended negotiations resulted in an agreement in principle to settle the Action. This agreement is memorialized in this Settlement Agreement.

## III. THE PROPOSED SETTLEMENT TERMS

### A.    Proposed Settlement Class

The Settlement provides substantial relief for the Settlement Class, which is defined as "all individuals in the United States who were impacted by the API Data Incident, including all who were sent a notice of the Data Incident that occurred on or around June 28, 2023." Settlement Agreement ("S.A.") ¶ 1.48. The Settlement Class contains approximately 31,000 persons. Barney Decl. ¶ 5.

### B.    Settlement Benefits

The Settlement negotiated on behalf of the Class provides a $457,500 non-reversionary Settlement Fund, from which Settlement Class Members may make a claim for the following benefits:

### 1.    Monetary Relief

a) <u>Cash Award</u>. Participating Settlement Class Members who submit a valid and timely Claim Form may elect to receive a payment (a "Cash Award"). The cash awards for all valid claimants shall be a pro rata share of the "Post Loss Payment Net Settlement Fund," which is effectively the remainder of the Settlement Fund after payment of: the cost of notice and administration; any attorneys' fees, expenses, and service awards approved by the Court; and approved Documented Loss Payments. S.A. ¶¶ 2.2(a). At this time, Class Counsel estimates that the pro rata payments should be approximately $100 per person.[3] Barney Decl. ¶ 17.

---

[3] This estimate is based on Class Counsel's estimate of a 5% claims rate and the Documented Loss Payments, among other things, and is subject to change prior to Final Approval based on the actual valid claims that are made.

b) <u>Documented Loss Payment</u>. In the event a Participating Settlement Class Member does not elect a Cash Award, the Settlement Class Member may submit a claim for a Settlement Payment of up to $5,000 for reimbursement in the form of a Documented Loss Payment. To receive a Documented Loss Payment, a Settlement Class Member must submit an attestation regarding any actual and unreimbursed Documented Loss, and reasonable documentation that demonstrates the Documented Loss itself. S.A. ¶ 2.2(b).

## 2.    Identify Theft Protection and Credit Monitoring

All Participating Settlement Class Members may submit a Claim to accept three years of free credit monitoring services. S.A. ¶ 2.2(c). The credit monitoring shall provide three-bureau monitoring and shall include (i) real time monitoring of the credit file at all three bureaus; (ii) dark web scanning with immediate notification of potential unauthorized use; (iii) comprehensive public record monitoring; (iv) medical identity monitoring; (v) identity theft insurance (no deductible); and (vi) access to fraud resolution agents to help investigate and resolve identity thefts. *Id.* API will pay for the credit monitoring services separate and apart from other Settlement benefits. *Id.*

## C.    Class Notice and Settlement Administration

Counsel for the Parties contacted several leading class action claims administrators to seek bids for providing administrative services for this Settlement. Barney Decl. ¶ 23. After thorough vetting of the proposals and comparing the cost efficiencies against the services provided, the Parties selected, and request that the Court approve, Simpluris, Inc. ("Simpluris") as Settlement Administrator. S.A. ¶ 1.46. The Settlement Administrator will be responsible for providing notice to Settlement Class Members, maintaining a Settlement Website with all pertinent documents and deadlines, communicating with Settlement Class Members, reviewing and making determinations regarding claims, and disbursing settlement payments.

The Notice Program will be paid for from the Settlement Fund and has been designed to provide the best Notice practicable, aiming to reach the greatest number of Settlement Class members possible. Barney Decl. ¶ 25. Notice will be given to the Settlement Class via direct, individual notice,

by sending the Postcard Notice (S.A., Exhibit 1) via U.S. mail to the postal addresses provided to the Settlement Administrator by API. S.A. ¶ 3.3(d). The Long Notice (S.A., Exhibit 2) will be posted on the Settlement Website, which the Settlement Administrator will establish prior to the dissemination of the Short Form Notice, along with other important documents, such as the Settlement Agreement and the motions for final settlement approval and for attorneys' fees, expenses, and service awards once they are filed. S.A. ¶ 3.3(c).

The notice documents, including the Postcard Notice and Long Notice, are based on models approved by courts in this District and in data breach settlements across the country. They are clear, concise, and directly apprise Settlement Class members of all the information they need to know regarding how to make a claim, opt out, or object to the Settlement. Barney Decl. ¶ 24. The timing of the Notice Program will give Settlement Class members adequate time to determine if they would like to submit a claim, opt out of, or object to the Settlement. In addition to the Settlement Website, a toll-free number with interactive voice responses will be established to address Settlement Class members' questions and assist them with their options when making claims under the Settlement. *Id.*

## D.    Opt-Out and Objection Procedures

Any Settlement Class member who wishes to exclude themselves from the Settlement must submit a written request for exclusion to the Settlement Administrator via U.S. mail postmarked no later than the Opt-Out and Objection Deadline or submitted online through the claims portal no later than the Opt-Out and Objection Deadline. S.A. ¶ 4.1. The written request for exclusion must include the following: (i) the name of the Action: *Schleicher v. API Financial Solutions Inc., Case No. 4:23-cv-01431*; (ii) full name of the member of the Settlement Class; (iii) current address of the member of the Settlement Class; (iv) claim number or other unique Settlement Class member ID assigned to the Settlement Class member and included in the Postcard Notice sent to the individual; (v) signature of the member of the Settlement Class (by hand if written; electronically if emailed); and (vi) the words "Request for Exclusion" or a similar, unambiguous statement that the member of the Settlement Class does not wish to participate in the Settlement. *Id.* ¶ 4.1. Other than those individuals excluded under the Class definition, any individual on the Class List who does not submit a valid and timely request

4

for exclusion in the manner described herein shall be deemed to be a Participating Settlement Class Member upon expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments applicable to the Settlement Class. *Id.* ¶ 4.3

Settlement Class Members wishing to object to the Settlement must submit a written notice of his or her objection to the Court on or before the Objection Deadline, as specified in ¶ 5.1 of the Settlement Agreement. The objection must include: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Participating Settlement Class Member (e.g., copy of Postcard Notice received, copy of original notice of the Data Incident received, or claim number or other unique Settlement Class member ID assigned to the Settlement Class member and included in the Postcard Notice sent to the individual); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection and all evidence the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement as to whether the objector and/or his or her counsel will appear at the Final Approval Hearing; (vi) the objector's written or electronic signature and, if represented by counsel, the objector's counsel's written or electronic signature. *Id.* ¶ 5.1.

Any Settlement Class Member who fails to object to the Settlement in the manner described in this Agreement and in the Notice provided pursuant to the Notice Program shall be deemed to have waived any such objection but may, whether he or she has submitted a written objection or not, attend the Final Approval Hearing and, at the Court's discretion, address the Court concerning the Settlement. S.A. ¶ 5.2

**E.    Release Provisions**

Upon entry of the Final Approval Order, Plaintiff and the Participating Settlement Class Members who do not submit a valid and timely Opt-Out Request will be deemed to have "fully, finally, and forever released, relinquished, and discharged all Released Claims." S.A. ¶ 6.2. "Released Claims" are fully defined in Section 1.42 of the Settlement Agreement, and include all claims "based on, concerning or arising out of the Data Incident or the allegations, transactions, occurrences, operative facts, or circumstances alleged in or otherwise described in the Complaint or otherwise asserted in the

Action" other than claims relating to the enforcement of the Settlement Agreement and the claims of any Settlement Class Members who timely opted out of the class. S.A. ¶ 1.42. *See Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996) (a settlement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action.) (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (CA2 1982)).

## IV.    LEGAL STANDARDS

Federal Rule of Civil Procedure 23(e) requires court review and approval of any proposed class action settlement. Federal courts strongly favor and encourage settlements, particularly in class actions where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Cohn v. Nelson,* 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.") (internal citations and quotations omitted). Courts, including those in this Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement, (2) dissemination of court approved notice to the class with the opportunity for putative class members to opt out or object to the settlement, and (3) a final fairness hearing at which class members may be heard regarding the settlement and at which evidence may be heard regarding the fairness, adequacy, and reasonableness of the settlement. Manual for Complex Litigation (Fourth) (2004) § 21.63.

Plaintiff seeks certification of a Settlement Class consisting of: "all individuals in the United States who were sent a notice of the Data Incident." S.A. ¶ 1.48. The Settlement Class includes approximately 31,000 individuals and satisfies Rule 23, as set forth below.

## V.    THE SETTLEMENT SATISFIES THE RULE 23(E) FACTORS

In preliminarily evaluating the fairness of the settlement, courts consider the factors articulated in Rule 23(e)(2), which include whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of

processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.[4]

## A.     Plaintiff and Her Counsel Have Adequately Represented the Settlement Class

Plaintiff and her counsel have vigorously and adequately represented the class since the start of the litigation. Plaintiff has actively participated in the litigation, providing allegations for the Complaint, gathering information for informal discovery, and working with Class Counsel in the settlement process. Class Counsel have likewise diligently pursued the litigation by investigating the factual and legal claims against API, drafting a comprehensive Complaint, and working to gather the documents and information necessary to properly evaluate the case and negotiate a robust settlement that provides Settlement Class Members with significant relief.

Proposed Class Counsel readily satisfy Fed. R. Civ. P. 23(g)(1)(B). They identified the potential claims, investigated them, and pursued them at considerable time and expense. Barney Decl. ¶ 6. Class Counsel are highly experienced in handling class action litigation, particularly with respect to claims involving data breach and data privacy such as are at issue in this case. *Id.* ¶¶ 37-39. As a result of Class Counsel's efforts, the proposed Settlement Agreement provides monetary and other benefits to the Settlement Class. *Id.* ¶ 36. As such, Plaintiff and her counsel adequately represent the Settlement Class.

## B.     The Settlement Agreement Was Negotiated at Arm's Length

The Settlement Agreement was fairly and honestly negotiated by months'-long, arm's-length bargaining between experienced counsel. "The fairness of the negotiating process is to be examined in the light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.*, No. 05-cv-01567, 2008 U.S. Dist. LEXIS 13069 (D. Colo. Feb. 11, 2008) (internal quotation omitted). "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there

---

[4] Rule 23(e) contemplates that the parties will identify "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Class Counsel confirms that no agreements exist other than those outlined herein and reflected in the Settlement Agreement. Barney Decl. ¶ 14.

is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas Dept. of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

Over the months following the filing of the Complaint, the Parties engaged in numerous discussions regarding the early potential settlement of this case, including by exchanging informal discovery related to the Data Breach and the named Plaintiff, thereby allowing the Parties to meaningfully engage in informed settlement negotiations. Barney Decl. ¶ 9. After months of discussion and informal discovery between the Parties, the Parties finally reached an agreement in principle, memorialized in the attached Settlement Agreement. *Id.* ¶ 10. The time expended to work out significant details and vigorous disagreements between the Parties demonstrates that this proposed resolution was the product of heavily contested and arm's-length negotiations.

**C.     The Relief Provided for the Settlement Class is Fair, Reasonable, and Adequate**

**1.     The Value of the Settlement Benefits**

The cash value of the non-reversionary Settlement Fund is $457,500, which represents a per class member recovery of $14.76 – greater than many approved data breach and privacy settlements nationwide, regardless of class size.[5] This figure, standing alone, supports the value of this Settlement by any objective measure. Further, the benefit conferred on the class far exceeds the $457,500 cash component provided in the Settlement when considering the value of the identify theft protection and credit monitoring services offered to every Settlement Class member, which pushes the value of the Settlement into the tens of millions of dollars. As explained in the Settlement Agreement, all Participating Settlement Class Members may submit a Claim to accept three years of free credit monitoring services. S.A. ¶ 2.2(c). This is an enormous benefit to Settlement Class Members that materially increases the value of the Settlement.

---

[5] *See e.g., In re Target Corp. Customer Data Breach Security Litigation*, MDL No. 2522 (D. Minn.) ($0.10 per class member recovery); *Madkin v. Automation Personnel Services, Inc.*, No. 2:21-cv-1177 (N.D. Ala.) ($4.59 per class member recovery); *Winstead v. ComplyRight, Inc.*, No. 1:18-CV-4990 (N.D. Ill.) ($4.54 per class member recovery); *Bingaman, et al. v. Avem Health Partners Inc.,* Case No. CIV23-130-SLP (W.D. Ok.) ($5.34 per class member recovery); *Kesner, et al. v. UMass Memorial Health Care, Inc.,* No. 2185-cv-01210 (Mass. Supp. Ct.) ($5.74 per class member recovery).

Given the multifaceted forms of relief available here without a trial, the Settlement provides extraordinary value to Participating Settlement Class Members, thereby supporting the Settlement.

### 2. The Costs, Risks, and Delay of Trial and Appeal

Plaintiff and Class Counsel acknowledges the substantial risks and delays that would arise in continued litigation. This case involves a proposed class of approximately 31,000 individuals; the need to establish cognizable harm and causation; a complicated and technical factual overlay; and a motivated, well-represented Defendant. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2018 U.S. Dist. LEXIS 242036 (N.D. Ohio Apr. 17, 2018) ("Data breach litigation is complex and risky.").

Although nearly all class actions involve a high level of risk, expense, and complexity, the peculiar circumstances surrounding the Data Incident in this case would have made continued litigation lengthy, complex, and difficult, and the rapid evolution of case law in this area of the law makes outcomes uncertain while increasing litigation expense. Given the obstacles and inherent risks Plaintiff faces with respect to her claims, including risks relating to class certification, summary judgment, and trial, the substantial benefits the Settlement provides favor preliminary approval of the Settlement. Barney Decl. ¶¶ 35-36.

Finally, because Plaintiff's case remains at the pleadings stage, the parties have not briefed, and the Court has not yet certified, any class treatment of the claims. Courts have reached different decisions as to whether to grant class certification in data breach cases. *Compare In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 35 (D. Me. 2013) (denying certification), *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 401 (D. Mass. 2007) (same), and *McGlenn v. Driveline Retail Merch., Inc.*, No. 18-cv-2097, 2021 U.S. Dist. LEXIS 179775 (C.D. Ill. Jan. 19, 2021) (same), *with Smith v. Triad of Alabama, LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017) (granting certification), *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. May 3, 2022) (certifying certain statewide classes; Rule 23(f) appeal granted), and *In re Anthem, Inc.*

*Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) ("While there is no obvious reason to treat certification in a data breach case differently than certification in other types of cases, the dearth of precedent makes continued litigation more risky.").

This case is complex and carries significant risks for the Parties as to both legal and factual issues, and litigating the case to trial would consume great time and expense. In contrast, the Settlement Agreement ensures that The Settlement Class may recover significant, immediate relief, including relief that this Action primarily sought to achieve. Importantly, the Settlement Agreement reflects the Parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes. As such, the current Settlement strikes an appropriate balance between Plaintiff's "likelihood of success on the merits" and "the amount and form of the relief offered in the settlement." *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

### 3.    The Effectiveness of Administration

The Parties agreed to retain Simpluris, an experienced and competent settlement and claims administrator familiar with handling data breach settlements. The 31,000 Settlement Class members are specifically identifiable from API's records and Notice of the Settlement and its terms will be individually mailed to each of them. The Notice Program will clearly inform the Settlement Class of their rights to opt out, to object, or to file a claim, as well as the mechanisms and deadlines for doing so, and will include all the information required by Rule 23. This Notice Program is more than sufficient, particularly where members of the Settlement Class have been identified by the Defendant, and most Settlement Class members will receive "individual notice to all members who can be identified through reasonable effort." *See* Fed. R. Civ. P. 23(c)(2)(B).

The Settlement Administrator will also be tasked with reviewing and determining the validity of submitted claims and will provide Settlement Class Members with an opportunity to correct any deficient submissions. Participating Settlement Class Members will receive payments for approved claims for cash relief using their preferred method (*i.e.* check or some form of electronic payment) within thirty (30) days from the Effective Date. S.A. ¶ 8.2. This process ensures that all Settlement Class members have an opportunity to seek relief, will have their claims assessed fairly by a competent

administrator, and will receive benefits in a timely manner. This factor supports a finding that the Proposed Settlement is adequate.

### 4.    The Experience and Views of Class Counsel

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed. 1997)).

Plaintiffs and proposed Class Counsel strongly believe the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class members. Class Counsel have substantial experience serving as lead counsel in numerous complex actions, including other data breach cases. Barney Decl. ¶¶ 38-39; *see also Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 451 F.3d 528, 537 (8th Cir. 2006) ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."). Based on their experience, Class Counsel believes the Settlement provides exceptional results for Settlement Class members while avoiding the uncertainties of continued and protracted litigation. Barney Decl. ¶ 35.

### 5.    The Proposed Fees, Expenses, and Service Awards

Pursuant to the Settlement Agreement, Class Counsel may apply for Attorneys' Fees not to exceed 33% of the cash Settlement Fund of $457,500, *i.e.*, $152,500, as well as litigation expenses up to $20,000. S.A. ¶ 7.2. Although Class Counsel have yet to move for fees in this Action, an award of one-third of the Settlement Fund is characteristic of other awards in class action suits in this District and the 8th Circuit. *See, e.g., Huyer v. Buckley*, 849 F.3d 395, 389–99 (8th Cir. 2017) (finding the district court did not abuse its discretion in awarding attorneys' fees that were one-third of the total settlement fund); *In re Life Time Fitness, Inc. Telephone Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622–624 (8th Cir. 2017) (affirming the district court's fee award of 28% of the settlement fund); *In re U.S. Bancorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 1002) (finding the district court did not abuse its discretion in

award attorneys' fees that were 36% of the total settlement fund); *see also Bishop, et al v. DeLaval Inc.*, Cas No. 5:19-cv-06129-SRB (W.D. Mo. June 7, 2022) at Doc. 268 (approving fee of one-third of the settlement fund) and Doc. 271 (issuing final approval of settlement). Consistent with the Settlement and Rule 23(h), Class Counsel will separately move for an award of fees and costs prior to the Opt-Out and Objection Deadline, and the Court will have a full opportunity to consider the appropriate fees as part of the final approval process.

Likewise, Class Counsel will seek reimbursement of expenses from the Settlement Fund, not to exceed $20,000. It is appropriate and customary in class litigation for class counsel to be reimbursed for out-of-pocket litigation expenses, and the Court may make a preliminary finding that such costs are reasonable. *See* 2 Joseph M. McLaughlin, McLaughlin on Class Actions § 6:24 (8th ed. 2011) (noting that "class counsel also is entitled to reimbursement from the class recovery (without interest) for the costs and reasonable out-of-pocket expenses incurred in prosecuting the litigation").

Finally, Class Counsel intends to seek a Service Award in the amount of $5,000 for the Class Representative. Pending a full motion on the requested Service Award, the Court can conclude this amount is likely reasonable given the work the Class Representative performed in the case, including time-consuming fact gathering and assisting Class Counsel in negotiating and finalizing the Settlement Agreement. S.A. ¶ 7.4.

**D.    The Proposal Treats Settlement Class Members Equitably**

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the Settlement treats all members of the Settlement Class equitably relative to each other. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). The Settlement treats Settlement Class members equitably, as all Settlement Class members are eligible for identity theft and credit monitoring services, as well as monetary reimbursement for Documented Losses or a Cash Award payment. S.A. ¶¶ 2.2(a)-(c).

## VI.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

As part of its review of a proposed class settlement, the Court "should make a preliminary determination that the proposed class satisfies the criteria" of Rule 23. Manual for Complex Litigation (Fourth) § 21.632. In evaluating a settlement, however, the Court does not consider trial manageability. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### A.    The Rule 23(a) Requirements are Satisfied

Before assessing the Parties' Settlement, the Court should first confirm that the underlying Settlement Class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; Manual for Complex Litigation (Fourth), § 21.632. These requirements are numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Schoenbaum v. E.I. Dupont De Nemours & Co.*, 2009 U.S. Dist. LEXIS 114080 (E.D. Mo. 2009).

#### 1.    Numerosity

In this Circuit, while there is no specific threshold number that satisfies this requirement, forty class members is generally sufficient. *See Schoenbaum*, 2009 U.S. Dist. LEXIS 114080 (quoting *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995)). Numbering approximately 31,000 individuals, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement. Joinder of so many individuals is clearly impracticable. *See Knowlton v. Anheuser-Busch Companies, LLC*, 2014 U.S. Dist. LEXIS 67507 (E.D. Mo. May 16, 2014) (certifying class of "[s]ome 800 persons" because "[r]equiring each of those individuals to bring his or her own legal action undoubtedly would be inconvenient and costly to both individuals and the legal system."); *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 186 (W.D. Mo. 2009) (holding that class of over "one thousand persons" satisfied numerosity requirement); *Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999) ("This Court finds that a class of twenty to sixty-five members is sufficiently numerous under Rule 23.").

#### 2.    Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is met where the issues raised have "the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores,*

*Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The threshold for commonality is low, requiring only that the issue "linking the class members is substantially related to the resolution of the litigation." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 26557 (D. Minn.) (internal citations and quotations omitted). That is, Plaintiff's "claims must depend on a common contention . . . [that] is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. "[T]he presence of differing legal inquiries and factual discrepancies will not preclude class certification." *Glen v. Fairway Indep. Mortgage Corp.*, 265 F.R.D. 474, 478 (E.D. Mo. 2010).

Plaintiff asserts that common questions include whether API failed to implement adequate data security measures; whether Class Members' Private Information was compromised in the Data Incident; whether API owed a duty to Class Members; whether API breached its duties; whether API's conduct was unfair; and whether API unreasonably delayed in notifying Plaintiff and Class Members of the material facts of the Data Incident. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2) even a single common question will do") (internal quotations omitted). Accordingly, these common issues satisfy the commonality requirement of Rule 23.

### 3. Typicality

"Typicality requires the plaintiff to show 'the claims or defenses of the representative parties are typical of the claims or defenses of the class [.]'" *Claxton v. Kum & Go, L.C.*, 2015 U.S. Dist. LEXIS 75605 (W.D. Mo. 2015) (quoting Fed. R. Civ. P. 23(a)(3)). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d at 1174 (8th Cir. 1995). Typicality exists when there are "other members of the class who have the same or similar grievances as the plaintiff." *In re Zurn Pex Plumbing*, 2013 U.S. Dist. LEXIS 26557. Class representatives "need not share identical interests with every class member, but only 'common objectives and legal and factual positions.'" *Claxton*, 2015 U.S. Dist. LEXIS 75605 (quoting *In re Uponor*, 716 F.3d at 1064).

The claims of Plaintiff and the Settlement Class arise from the same event or course of conduct: the June 28, 2023 Data Incident. Plaintiff's claims are typical because she, like all members

of the Settlement Class, provided her Private Information to API. API, as alleged, owed a duty and was contractually obligated to protect and keep that Information secure. Plaintiff, like all other members of the Settlement Class, avers she has sustained injury and damages as a result of API's alleged uniform breach of its duty and contractual obligations to adequately safeguard that information. Plaintiff's claims arise out of the same course of conduct, are based on the same legal theories, seek the same types of damages as those of the Settlement Class, and meet all necessary standing requirements; therefore, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4.      Adequacy of Representation

Rule 23(a)(4) requires that the class representative and class counsel "fairly and adequately protect the interests of the class." The adequacy requirement is met where: "(1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004) (internal quotes omitted).

Here, Plaintiff has no conflicts of interest with other Settlement Class Members, is not subject to unique defenses, and she and her counsel have vigorously prosecuted and continue to vigorously prosecute this case on behalf of the Class. Plaintiff is a member of the Class who asserts she experienced the same alleged injuries and seeks, like other Settlement Class Members, compensation for harm resulting from API's data security shortcomings. Further, Plaintiff's counsel has decades of combined experience as zealous class action litigators, including in the area of data breach litigation, and are well suited to continue representing the Settlement Class. *See* Barney Decl. ¶¶ 38-39; Exhibit C to Barney Decl. Settlement Class Counsel is experienced in both prosecuting and trying class actions and have incurred significant costs and risks in this litigation by performing extensive work to identify and investigating potential claims in this Action, establishing the factual bases for the claims sufficient to prepare a detailed class action complaint, and evaluating confidential discovery for the purposes of negotiating a fundamentally fair and reasonable settlement.

For these reasons, the Court should appoint Mason Barney and Tyler Bean of Siri & Glimstad, LLP as Class Counsel and appoint Plaintiff Doris Schleicher as Class Representative.

**B.      The Rule 23(b)(3) Requirements are Satisfied**

In addition to meeting the four requirements of Rule 23(a), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies Rule 23(b)(3).

**1.      Predominance**

The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. *See* Fed. R. Civ. P. 23(b)(3) and Advisory Committee Note – 1966 Amendment on Rule 23(b)(3). The predominance requirement is satisfied when plaintiff and class members share a common claim that is "capable of class wide resolution," meaning that determination of the claims' "truth or falsity will resolve an issue that is central to [the claims'] validity . . . in one stroke." *Dukes*, 564 U.S. at 350.

The proposed Settlement Class is well-suited for certification under Rule 23(b)(3) because questions common to Settlement Class members predominate over questions affecting only individual Settlement Class members. Plaintiff's claims for negligence, negligence per se, breach of confidence, invasion of privacy, breaches of express and implied contract, and unjust enrichment raise common issues capable of class wide resolution, and these issues predominate over any questions that would affect individual Settlement Class members. Each of these causes of action concerns the same fundamental questions of fact and law regarding API's conduct and the Data Breach, including those questions outlined above.

16

The resolution of these common issues revolves around common evidence that does not vary among Settlement Class members, so they can be fairly resolved for all Settlement Class members at once. Similarly, resolving these questions as to one claim would resolve the other claims as well. *See In re Anthem*, 327 F.R.D. at 314 (the "main issue" of the plaintiffs' contract and negligence claims "boils down to the common factual contention of whether [the defendant's] data security levels were reasonable"). These common questions are "central to the validity of each one of the claims" and may be resolved "in one stroke." *See Dukes*, 564 U.S. at 350. Here, Settlement Class members were all allegedly harmed by the same conduct, and common factual and legal issues overwhelmingly predominate over individualized concerns.

2.      **Superiority**

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . . ." Charles Wright, Arthur Miller & Mary Kay Kane, 7AA Fed. Prac. & Proc. Civ. § 1779 (3d ed. 2005). A class action represents the only realistic means through which the approximately 31,000 Settlement Class members may obtain relief due to the amount in dispute for individual Class Members, the complexity of the technical issues involved in the Data Breach, and the costly expert testimony and document review that this case requires. No single member of the class has an interest in controlling the prosecution of this action because Plaintiffs' claims and those of Settlement Class members concern the same incident. Alternatives to a class action are either no recourse for over 31,000 individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. There are thousands of class members with modest individual claims, most of whom likely lack the resources necessary to pursue individual legal redress. The superiority requirement thus is satisfied here.[6]

---

[6] *See In re Anthem*, 327 F.R.D. at 315-16; *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("[T]he more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class 17 million suits each seeking damages of $15 to $30. . . . The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30") (quoting *Carnegie v. Household Int'l., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)).

## VII.    APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVES

Under Rule 23(g), "a court that certifies a class must appoint class counsel . . . [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider: (1) the proposed class counsel's work in identifying or investigating potential claims; (2) the proposed class counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) the proposed class counsel's knowledge of the applicable law; and (4) the proposed class counsel's resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, Proposed Class Counsel have spent a significant amount of time identifying the potential claims in this Action and pursuing relevant discovery. They are recognized as experts in consumer law and class-action litigation, particularly in the context of data breach and data privacy litigation, and have been appointed class counsel in major consumer class action cases. *See* Barney Decl. ¶¶ 38-39. Further, they have committed their full resources to representing the Settlement Class here, and will continue that commitment in resolving this Action and administering the Settlement. *See id.* ¶ 34. Accordingly, the Court should appoint Mason A. Barney and Tyler J. Bean of Siri & Glimstad LLP as Class Counsel.

The Court should also appoint Doris Schleicher as Settlement Class Representative for the Settlement Class. Settlement Class Representative has fulfilled her duties in pursuing her claims and those of Settlement Class members in this Action, and has vigorously represented the interests of the Settlement Class. *See* Barney Decl. ¶ 32. Plaintiff Schleicher is pursuing this case on behalf of all Settlement Class members, is fulfilling her duty to protect the interests of all Settlement Class members, and she does not have any conflicts of interest with any other members of the Settlement Class. *Id.* Plaintiff will fairly and adequately represent and protect the interests of the Settlement Class as the Class Representative.

## VIII.   THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

Rule 23 requires that prior to final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For

classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

Here, after a competitive bidding process, the Parties have agreed to a robust Notice Program to be administered by a well-respected third-party Settlement Administrator—Simpluris—which will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member by U.S. mail. *See* Declaration of Christopher Leung of Settlement Administrator Simpluris Inc. in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Admin Decl.") ¶ 8. Prior to sending the Short Notice, Simpluris will check all mailing addresses against the National Change of Address ("NCOA") database maintained by the USPS to ensure all address information is up-to-date and accurately formatted for mailing.[7] *Id.* ¶ 6. Notices that are returned as undeliverable will be re-sent to forwarding addresses, and skip traces will be used to find the current addresses of Settlement Class Members. S.A. ¶ 3.3(d).

Simpluris estimates that the total cost of notice and administration will be $34,234. Admin Decl. ¶ 4. The Notice Program and Claim Form negotiated by the Parties are clear, concise, and inform Settlement Class members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt out of the Settlement. *Id.* ¶ 5(d). S.A. Exs. 1, 2, and 3.

The Settlement Administrator will also establish a dedicated Settlement Website that will allow Settlement Class members to file an online Claim Form. *See* Admin Decl. ¶ 5(b). In addition, the

---

[7] The NCOA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address (COA) records, including names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service. The address information is maintained on the database for 48 months and reduces undeliverable mail by providing the most current address information, including standardized and delivery-point-coded addresses, for matches made to the NCOA file for individual, family, and business moves.

Settlement Website will include relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Settlement Class members may opt out (request exclusion) from or object to the Settlement, contact information for the Settlement Administrator, and how to obtain other case-related information. S.A. ¶ 3.3(c). The Settlement Administrator will also establish a toll-free help line where callers will be able to hear an introductory message, have the option to learn more about the Settlement in the form of recorded answers to FAQs, and request that a Long Notice be mailed to them. *Id.* ¶ 3.2(e).

The Notices and Notice Program set forth in the Settlement satisfy the requirements of due process and Rule 23, and the Court should direct the Parties and the Settlement Administrator to proceed with providing Notice to Settlement Class members.

## IX. CONCLUSION

The Settlement Agreement proposed is an immediate, substantial, and fair settlement. It achieves the goals of the litigation, benefits the entire Settlement Class, and accounts for the risks and uncertainties of continued, vigorously contested litigation. Plaintiff therefore respectfully requests that the Court grant the Motion and enter the agreed proposed Preliminary Approval Order (Exhibit 4 to the Settlement Agreement) submitted contemporaneously with this Motion.

Respectfully submitted this 12th day of July, 2024.


Dated: July 12, 2024                    */s/ Michael D. Pospisil*
                                        Michael D. Pospisil #49139MO
                                        Pospisil Swift LLC
                                        1600 Genessee St., Ste. 340
                                        Kansas City, Missouri 64102
                                        Tel: (816) 895-6440
                                        Fax: (816) 895-9161
                                        mts@pslawkc.com
                                        mdp@pslawkc.com

                                        Mason A. Barney (*pro hac vice* forthcoming)
                                        Tyler J. Bean (admitted *pro hac vice*)
                                        **SIRI & GLIMSTAD LLP**
                                        745 Fifth Avenue, Suite 500
                                        New York, NY 10151

20

*mbarney@sirillp.com*
*tbean@sirillp.com*

*Counsel for Plaintiff and Putative Class*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on July 12, 2024, I caused to be filed and served a true and correct copy of the foregoing document using the Court's Electronic Case Filing (ECF) system, which will send notification of such filing to all counsel of record registered to receive ECF Notices.

*/s/ Michael D. Pospisil*
Michael D. Pospisil #49139MO
